UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| | | | |
|---|---|---|---|
| Case No. | 5:19-cv-01555-CAS | Date | May 4, 2020 |
| Title | UNITED STATES OF AMERICA v. KEVIN WILLIAM DURNELL | | |

Present: The Honorable **CHRISTINA A. SNYDER**

| Catherine Jeang | Laura Elias | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:

Robert Lester, AUSA

Attorneys Present for Defendants:

Kevin Durnell, Pro Se

Attorneys Present for Garnishee:

Stephanie Durnell, Pro Se

**Proceedings:** TELEPHONE HEARING ON THE GOVERNMENT'S MOTIONS TO COMPEL FURTHER DISCOVERY RESPONSES FROM KEVIN AND STEPHANIE DURNELL (Dkts. [ 46 ] and [ 51 ], filed February 14, 2020 and March 5, 2020)

## I.   INTRODUCTION AND BACKGROUND

On May 10, 2012, a criminal judgment was entered against defendant Kevin William Durnell, requiring him to pay $100,000.00 in restitution as well as a $100.00 special assessment. See United States v. Durnell, Case No. 5:11-cr-00092 (C.D. Cal.), Dkt. 28. On August 20, 2019, plaintiff the United States of America ("the government") filed this civil action, seeking an order issuing a writ of continuing garnishment in order to secure payment on the criminal judgment entered against Kevin Durnell. See Dkt. 1.[1] The government contends that, as of August 16, 2019, the balance of Kevin Durnell's criminal debt remains $87,313.00. Id. at 1. Accordingly, the government seeks to garnish the salaries of both Kevin Durnell, and those of Stephanie Durnell, whom the government understood to be Kevin Durnell's spouse.[2] Id.

---

[1]   Unless otherwise specified, references are to the docket in the government's civil writ of garnishment action.

[2]   The government contends that, pursuant to California law, it may garnish the wages of Stephanie Durnell to secure payment on Kevin Durnell's criminal judgment because

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 5:19-cv-01555-CAS | Date | May 4, 2020 |
| Title | UNITED STATES OF AMERICA v. KEVIN WILLIAM DURNELL | | |

On October 7, 2019, the Court held a hearing regarding the government's request for a writ of garnishment. Dkt. 20. During the hearing, Kevin and Stephanie Durnell, appearing *pro se*, argued that the Court should *not* allow the government to garnish Stephanie Durnell's wages because Kevin and Stephanie Durnell legally separated on April 3, 2019, and that Stephanie Durnell's wages therefore were not community property subject to garnishment. Dkt. 23 at 5. The Court imposed a temporary stay, allowing the government to take discovery on the Durnells' claim that they were separated. Dkt. 20.

The government moved to compel further production of documents and deposition testimony from Kevin Durnell on February 14, 2020. Dkt. 46. The government likewise moved to compel further production of documents and deposition testimony from Stephanie Durnell on March 5, 2020. Dkt. 51. The gravamen of the government's motions is that Kevin and Stephanie Durnell have refused to produce documents and have declined to answer questions during deposition, purportedly invoking their rights to avoid self-incrimination pursuant to the Fifth Amendment to the United States Constitution.

The Court held a hearing on May 4, 2020. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.   LEGAL STANDARD

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself[.]" U.S. Const. amend. V. "[T]he Fifth Amendment's protections against self-incrimination can be asserted in any proceeding, be it civil, criminal, administrative, judicial, investigative or adjudicatory. However, in the civil context, the invocation of the privilege is limited to those circumstances in which the person invoking the privilege reasonably believes that his disclosures could be used in a criminal prosecution, or could lead to other evidence that could be used in that manner." Doe ex rel. Rudy-Glanzer v. Glanzer, 232 F.3d 1258, 1263 (9th Cir. 2000) (internal citations omitted). In addition, "[i]t is well established that in a criminal trial a judge or prosecutor may not suggest that the jury draw an adverse inference from a defendant's failure to testify. In civil proceedings, however, the Fifth Amendment does not forbid fact finders from drawing adverse inferences against a party who refuses to testify." United States v. Solano-Godines, 120 F.3d 957, 962 (9th Cir. 1997) (internal citations omitted).

---

Stephanie Durnell's salary constitutes "community property" that is available to satisfy Kevin Durnell's criminal judgment obligations. Dkt. 1 at 3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 5:19-cv-01555-CAS | Date | May 4, 2020 |
| Title | UNITED STATES OF AMERICA v. KEVIN WILLIAM DURNELL | | |

### III.   DISCUSSION

#### A.   The Government's Request to Compel Discovery and Testimony

The government seeks an order from the Court compelling Kevin and Stephanie Durnell to each produce documents and to answer, during deposition, particular questions regarding their purported legal separation and their financial affairs. See generally Dkts. 46, 51. According to the government, Kevin Durnell's invocation of his right against self-incrimination is baseless because Kevin Durnell "has not contended, much less shown, that there is some ongoing criminal investigation of him (excluding, of course, the pending supervision revocation proceedings in the related criminal case)." Dkt. 46 at 20. The government similarly avers that Stephanie Durnell's invocation of her right against self-incrimination is baseless because "[f]ew if any of these questions and document requests, of themselves, suggest that substantive responses could be incriminating[.]" Dkt. 51 at 8.

"In civil cases, an individual may invoke the privilege if he reasonably believes his answers could be used in a criminal prosecution or lead to other evidence that could be used in a criminal prosecution." Englebrick v. Worthington Indus., Inc., 670 F. Supp. 2d 1048, 1050 (C.D. Cal. 2009) (internal citations omitted). "A valid assertion of the privilege does not require an imminent criminal prosecution or investigation: 'The right to assert one's privilege against self-incrimination does not depend upon the likelihood, but upon the possibility of prosecution.'" Id. (citing In re Master Key Litigation, 507 F.2d 292, 293 (9th Cir.1974) (internal alterations omitted). "A possibility of prosecution exists if the witness or target has not received a grant of immunity, the statute of limitations has not run, double jeopardy does not apply, and there are no other concrete indications that criminal prosecution is barred." KST Data, Inc. v. DXC Tech. Co., No. 2:17-cv-07927-SJO-SK, 2018 WL 5776842, at *2 (C.D. Cal. Oct. 15, 2018) (internal citation omitted).

Were the Court to compel Kevin and Stephanie Durnell to produce documents or provide testimony regarding their alleged legal separation, the possibility of prosecution appears remote. However, the Court cannot say, at this juncture, that the possibility of prosecution is *non-existent*. For that reason, the Court **DENIES** the government's motions to compel Kevin and Stephanie Durnell to produce documents and provide testimony regarding their alleged legal separation.[3]

---

[3]   The Court notes that the Durnells appear to have invoked their rights against self-incrimination in response to document requests and deposition questions the government propounded regarding other topics, including the Durnells' financial affairs. To be clear,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 5:19-cv-01555-CAS | Date | May 4, 2020 |
| Title | UNITED STATES OF AMERICA v. KEVIN WILLIAM DURNELL | | |

### B.   The Government's Request for an Adverse Inference

In the alternative, the government seeks an order from the Court allowing the government to draw an adverse inference against Kevin and Stephanie Durnell that they are not, in fact, legally separated. See generally Dkts. 46, 51. "Where . . . a purported invocation of privilege is invalid, the court has the authority to compel a response, thus ensuring that the jury is not deprived of relevant evidence. This is in contrast to proper invocations of privilege, in which a court has no authority to compel a response, making an adverse inference the only available remedy for a party's deprivation of relevant evidence." Prime Media Grp., LLC v. Acer Am. Corp., No. 12-cv-05020-BLF, 2015 WL 527836, at *4 (N.D. Cal. Feb. 6, 2015)  Adverse inferences may be drawn based upon a party's or a witness's invocation of the right against self-incrimination in a civil case: "(1) when independent evidence exists of the fact to which the party refuses to answer, (2) when there is a substantial need for the information, and (3) there is not another less burdensome way of obtaining the information." Lehtonen Tr. of PurschasePro.com, Inc. v. Gateway Companies, Inc., No. 2:04-cv-00625-KJD-GWF, 2006 WL 8442279, at *1 (D. Nev. Aug. 8, 2006).  The government satisfies these requirements here.

For example, the government seeks an adverse inference that the Durnells' "petition for legal separation is a fraud on the United States in the context of this garnishment action[.]" Dkt. 46 at 2.  During the October 7, 2019 hearing, Kevin Durnell represented to the Court that he and Stephanie Durnell legally separated because they did not believe in divorce due to their religious beliefs. Dkt. 23 at 7. However, Kevin and Stephanie Durnell both subsequently testified, during deposition, that they were each previously married and divorced.  See Dkt. 46-4 ("Kevin Durnell Dep. Tr.") at 39:2–19; Dkt. 51-4 ("Stephanie Durnell Dep. Tr.") at 12:8–16.  The Durnells' deposition testimony—that they *each* had been previously married and divorced—tends to undermine the explanation for their separation that Kevin Durnell provided on the record during the October 7, 2019 hearing.

---

the Court expresses no opinion as to whether the Durnells validly and meritoriously invoked their rights against self-incrimination in response to the government's document requests and deposition questions directed to these other topics.  In other words, in determining that the government has failed to establish that there is no risk of prosecution with respect to the Durnells' representation to the Court that they are legally separated, the Court does not, at this juncture, foreclose the government from seeking further discovery and testimony from Kevin and Stephanie Durnell regarding topics other than their purported separation which may be relevant to this action, such as their financial affairs.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | | |
|---|---|---|---|
| | **CIVIL MINUTES - GENERAL** | | **'O'** |
| Case No. | 5:19-cv-01555-CAS | Date | May 4, 2020 |
| Title | UNITED STATES OF AMERICA v. KEVIN WILLIAM DURNELL | | |

Moreover, Kevin Durnell testified, during deposition, that he moved into an apartment in Riverside, California, following his March 26, 2019 release from prison, that both his and Stephanie Durnell's names were on the apartment lease, and that as of February 14, 2020, Kevin Durnell had not, himself, yet made any rent payments. Kevin Durnell Dep. Tr. at 62:25–64:13. This deposition testimony tends to suggest the existence of an ongoing relationship between Kevin and Stephanie Durnell which extends beyond their purported legal separation, which the Durnells contend began no later than April 3, 2019. Finally, when asked how she wished to receive a copy of the transcript of her deposition, Stephanie Durnell indicated that the court reporter could provide the transcript to Jodie Knez, Kevin Durnell's probation officer, and that "Kevin will pick it up from Jodie."[4] Stephanie Durnell Dep. Tr. at 34:15. Taken together, independent evidence exists that Kevin and Durnell are not, in fact, legally separated because the record presently before the Court tends to indicate that neither Kevin nor Stephanie Durnell are engaging in conduct that is consistent with a genuine intent to end the marriage. See Cal. Fam. Code § 70(a)(2) (California law defines a previously married couple's "date of separation" as "the date that a complete and final break in the marital relationship has occurred, as evidenced by . . . conduct of the spouse [that] is consistent with the intent to end the marriage.").

Similarly, the government has a substantial need for information regarding the validity of the Durnells' purported separation, and there is no less burdensome way of obtaining that information. The government seeks to garnish Stephanie Durnell's wages, as a means of securing payment towards Kevin Durnell's criminal debt, on the grounds that Kevin Durnell's criminal debt is a community debt, while Stephanie Durnell's wages are a community asset. See Dkt. 1 at 1–2. Whether the Durnells legally separated prior to the government's filing of this action therefore bears on whether the government can garnish Stephanie Durnell's wages, weighing in favor of the government's request for an adverse inference. See Sec. & Exch. Comm'n v. Liu, 262 F. Supp. 3d 957, 974 (C.D. Cal. 2017) (concluding that the Securities and Exchange Commission had demonstrated a substantial need for information where defendant invoked right against self-incrimination during deposition in a civil case with respect to questions regarding scienter because "scienter is a factor relevant to the Court's consideration of whether to impose a permanent injunction"). Moreover, given that both Kevin and Stephanie Durnell have refused to produce documents or provide testimony regarding their alleged legal separation, there is

---

[4] Stephanie Durnell ultimately advised the court reporter that the reporter could mail the transcript to Stephanie Durnell at an address which the Court notes is different from that of the apartment where Kevin Durnell testified that he had been residing.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | | |
|---|---|---|---|
| | **CIVIL MINUTES – GENERAL** | | **'O'** |
| Case No. | 5:19-cv-01555-CAS | Date | May 4, 2020 |
| Title | UNITED STATES OF AMERICA v. KEVIN WILLIAM DURNELL | | |

no alternative, less burdensome method of obtaining relevant information. See id. (determining that "there is no alternative less burdensome method of obtaining direct evidence of Liu and Wang's scienter other than adverse inferences from their deposition" where "Liu and Wang have consistently stymied, thwarted, and stonewalled the SEC's attempts to obtain business records, such as emails, that could confirm their high degrees of scienter."); accord Prime, 2015 WL 527836, at *2 (determining that "there is no less burdensome way of obtaining . . . evidence" and that non-movants "should not be rewarded for frustrating Acer America's legitimate discovery attempts").

## IV.  CONCLUSION

The Court **GRANTS in part** and **DENIES in part** the government's motions.[5] The Court **DENIES** the government's motions to the extent that the government requests that the Court compel Kevin and Stephanie Durnell to produce documents or provide testimony regarding their purported legal separation.  However, the Court **GRANTS** the government's motions to the extent that the government seeks to draw an adverse inference that the Durnells' purported separation is a fraud intended to frustrate the government's attempts to secure payment on Kevin Durnell's criminal debt.  Should either Kevin or Stephanie Durnell wish to rebut the adverse inference, the Court will allow them to come forward with evidence affirmatively demonstrating the legitimacy of their separation. However, the Court cautions Kevin and Stephanie Durnell that if this evidence is deemed to be a waiver of their rights against self-incrimination, the Court will revisit the question of whether the Court may compel testimony and the production of documents.

In addition, the government **SHALL** file any motion to compel compliance with the government's subpoena duces tecum by **May 6, 2020**, noticing a telephonic hearing date

---

[5]  In its reply brief, the government contends that "on April 9, 2020, in response to the subpoena duces tecum that the [government] had served on Nordstrom in an attempt to at least get some information, the Durnells filed an Objection to the entire subpoena." Dkt. 62 at 2.  The government's reply brief therefore requests "that the Court overrule the Durnells' Objection to the Nordstrom subpoena duces tecum." Id. "It is within this Court's discretion to not consider arguments or requests raised for the first time in a reply brief." Smith v. Los Angeles Unified Sch. Dist., No. 2:93-cv-07044-RSWL-GHK, 2016 WL 4402797, at *2 (C.D. Cal. Aug. 17, 2016).  Because the government raised its request for the Court to overrule the Durnells' objection to the Nordstrom subpoena for the first time in its reply brief, the Court declines to consider the government's request at this juncture.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 5:19-cv-01555-CAS | Date | May 4, 2020 |
| Title | UNITED STATES OF AMERICA v. KEVIN WILLIAM DURNELL | | |

of **June 1, 2020, at 10:00 a.m.**, for the motion.  The Durnells shall file any opposition by **May 26, 2020**.  The government shall reply orally at the **June 1, 2020** hearing.  The Court **CONTINUES** the hearing on the writ of garnishment to **June 15, 2020, at 10:00 a.m**.

　　IT IS SO ORDERED.

|  | | 00 | : | 31 |
|---|---|---|---|---|
| | Initials of Preparer | | CMJ | |